No. 17,894.

THE PUEBLO ATHLETIC CLUB v. AMERICAN BONDING COMPANY OF BALTIMORE.

(307 P. [2d] 813)

Decided February 25, 1957. Rehearing denied March 18, 1957.

Messrs. JENKINS, STEWART & TURSI, for plaintiffs in error.

Mr. A. T. STEWART, Mr. WALTER J. PREDOVICH, for defendant in error.

*In Department.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties will be referred to as they appeared in the trial court, where The Pueblo Athletic Club, a corporation, was plaintiff and American Bonding Company of Baltimore, a corporation, was defendant.

Plaintiff sought recovery against defendant on a "Dishonesty Bond" executed by defendant and which provided that defendant would indemnify plaintiff against all direct losses which the insured shall sustain and discover through any fraudulent or dishonest act or acts of certain persons in the employ of plaintiff, including a Mr. Chester Heitsch, secretary and treasurer of plaintiff corporation. Plaintiff sought recovery of $615.00 made up of four items, including three small sums, the main item being the difference in the number of admission tickets allegedly delivered to Mr. Heitsch and which it is claimed he failed to account for in connection with a series of boxing exhibitions staged by plaintiff in January and March, 1954.

Issue was joined and at the trial the court directed a verdict in favor of defendant. Judgment of dismissal was entered, and plaintiff brings the case here for review on writ of error.

The principal contention in the case arises over an alleged shortage in connection with tickets for the boxing exhibitions staged by plaintiff. It appears that the tick-

ets were ordered by Mr. Davis, president of the plaintiff corporation, from the Congress Times Press of Pueblo and it in turn had the tickets printed by the Acme Ticket Company of Colorado Springs, Colorado. When the Congress Times Press received the tickets from the Acme Ticket Company they were delivered to Mr. Davis, who in turn delivered blocks of them to divers persons, including the directors of plaintiff and businessmen in Pueblo for sale on a commission basis. Many tickets were "complimentary" and so marked by Mr. Davis who delivered them to persons who were entitled to attend without payment of admission. The Acme Ticket Company said it had printed 443 ringside tickets and the witness Miss Craddock of the Congress Times Press testified that she delivered 388 ringside tickets to Mr. Davis for each event. None of the parties involved counted the ringside tickets and whether the number was 443 as reported by the Acme Company, or only 388 as testified by Miss Craddock was not established. The controversy centers around these ringside tickets, which it is claimed were not accounted for by Mr. Heitsch, who it is alleged was responsible for their sale. In an attempt to prove its case plaintiff produced ushers who testified that the ringside section was well filled at each exhibition.

By its terms the dishonesty bond provided that "The Insured shall notify the Underwriter by telegram or registered letter addressed and sent to it at its Home Office in the City of Baltimore, Maryland, of any default hereunder on the part of any Employee, within a reasonable time after discovery thereof by the insured, or by any partner or officer thereof not in collusion with such Employee." The bond further provided: "Within ninety (90) days after discovery as aforesaid, of any default hereunder, the Insured shall file with the Underwriter affirmative proof of loss, itemized and duly sworn to, on proof of loss form in use by the Underwriter, and shall, produce from time to time, for examination by its repre-

sentatives all books, documents and records pertaining to such loss."

The alleged loss on which plaintiff's claim was based was discovered by Mr. Davis, President of the plaintiff corporation, and at the time of trial plaintiff's sole stockholder and officer, who testified on direct examination that he discovered the loss "around the 7th or 8th of April or maybe the 10th of April" 1954. On cross-examination he said that he discovered the loss the first part of May, 1954.

Plaintiff made no positive proof of loss, itemized and sworn to as provided by the bond. After the ninety day period had expired some oral communication was had between Davis and the Pueblo agent of defendant about the purported loss. No writings were executed by plaintiff.

The evidence discloses that in the summer of 1954 Mr. McMichael, not a certified accountant, examined the books and records of plaintiff and made a report to Mr. Davis. Mr. McMichael testified that from his examination of the books and records of plaintiff he did not find any wrongful, fraudulent or dishonest act on the part of Mr. Heitsch. He said there may have been some mistakes, but nothing "criminating." He also said that he found nothing to indicate Mr. Heitsch withheld anything for his own use. Later Mr. Davis employed the firm of Davidson Hill, certified public accountants, to audit the books and records. Charles E. Allen of the Davidson Hill firm testified as a witness for plaintiff that no portion of any discrepancy found by him in the books of plaintiff could be characterized as "wrongful, fraudulent and dishonest" on the part of Mr. Heitsch.

The transcript in this case consists of 697 folios, together with over twenty-five exhibits. Every conceivable matter in which Mr. Heitsch figured during the time he was secretary and treasurer of the plaintiff corporation was offered by counsel for plaintiff. A careful reading of the evidence offered and received on behalf

of plaintiff demonstrates the correctness of the court's determination that defendant was entitled to an instructed verdict in its favor.

■ Under the record as made a verdict for plaintiff, had one been returned, could not be sustained, since the direct and affirmative proof required in such cases was entirely lacking. In fact the evidence refutes the charge that Mr. Heitsch was dishonest.

■ In *American Surety Co. v. Capitol Building and Loan Association,* 97 Colo. 510, 50 P. (2d) 792, it was said: "The burden of proof rested upon plaintiff to establish a direct cash loss, instead of an uncertain book shortage, and it had the further burden of definitely tracing a cash shortage to the 'dishonest act' of Vetterling as charged in the complaint." The bond in the American Surety Co. case was "a dishonesty bond" just as in the instant case. The court further said: "To prevail, plaintiff was required to produce direct and affirmative proof first, of a loss, and second, that it was due to the dishonesty or theft of Vetterling. It could not recover under its complaint, until it had proven that the particular employee named therein had taken the funds. This could not be presumed; it had to be proven. While the employee might have been careless and negligent, she was presumed to be honest until the contrary was definitely shown. We believe that plaintiff failed to sustain the burden of this affirmative proof and that the motion for nonsuit was erroneously overruled."

■ In its effort to fix liability under this bond, plaintiff not only failed to prove dishonesty on the part of Mr. Heitsch, but the expert witnesses produced by him affirmatively established that the discrepancies in the books kept by Heitsch were due to nothing more than negligence on his part. The bond sued upon did not cover such a situation.

Not only because the plaintiff failed to give defendant timely and proper notice and proof of the alleged fraudulent or dishonest acts, but because the plaintiff did not

produce direct and positive proof of a loss due to the dishonesty of Mr. Heitsch, the ruling of the trial court was correct. The judgment is, therefore, affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE DAY concur.